**SO ORDERED.**

**SIGNED December 19, 2008.**



_____
HENLEY A. HUNTER
UNITED STATES BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

IN RE:                                               CASE NO: 07-80701
     DOROTHY LOUISE CARTY

THOMAS R. WILLSON, TRUSTEE

VERSUS                                      ADVERSARY NO. 07-8034

BAY-1 PROPERTIES, INC.,
BENJAMIN LOUIS BAYONNE, III,
DEUTSCHE BANK NATIONAL TRUST COMPANY,
AS TRUSTEE OF AMERIQUEST MORTGAGE
SECURITIES, INC. ASSET BACKED PASS
THROUGH CERTIFICATES, SERIES 2005-R11
UNDER THE POOLING AND SERVICING AGREEMENT

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

      This is a proceeding by the Chapter 7 Trustee to avoid certain transfers of immovable properties as fraudulent conveyances under 11 U.S.C. §§548, 544(b),547,and 549; to have the same properties declared free of liens and encumbrances; to equitably subordinate the claim, if any, of the named defendants; and to recover interest on the transfer and all costs. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (B), (H), (K) and (O). Jurisdiction is proper per 28 U.S.C.§1334 and by reference from the district court. No party has moved to withdraw the reference

the district court has not done so on its own motion. Pursuant to these reasons, the motion is granted in part and denied in part.

## Factual History

Dorothy Louise Carty filed a voluntary petition under Chapter 7 on July 25, 2007. Debtor's statement of affairs listed the transfer of five rental properties to Benjamin Louis Bayonne, III, d/b/a Bay-1 Properties, Inc. for a total consideration of $10,000.00, within the two years immediately preceding the filing of the petition.[1] The nature of the relationship between debtor and Mr. Bayonne of Bay-1, Inc. is never fully explained.[2] Debtor listed two suits as "pending" against her in the Ninth Judicial District Court for Rapides Parish, Louisiana (Doc. Nos. 227,717 and 227,708), in which Deutsche Bank National Trust Co. and Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc., et al, were the respective plaintiffs. She listed $10,000.00 in income for the sale of 5 rental houses within the two years immediately preceding the filing of the petition.

Motions to lift the stay were filed by Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc., Asset Backed Pass Through Certificates, Series 2006-RI, under the Pooling and Servicing Agreement Dated as of February 1, 2006, as serviced by AMC Mortgage Services, Inc., hereinafter "Deutsche Bank," as to the five properties. The Trustee filed oppositions to the motions, seeking time to investigate the transfers, but the motions were ultimately withdrawn without prejudice by orders entered November 27, 2007. (Doc. # 38-42.) The Trustee filed this complaint on November 12, 2007, naming Bay-1 Properties, Inc., Benjamin Louis Bayonne, III, and Deutsche Bank National Trust Co. as Trustee of Ameriquest Mortgage Service, Inc., as defendants.[3] The complaint alleges nine causes of action:

---

[1] The properties are listed as 1834 and 1838 Yale Street, 86 Bertie street, 221 24th Street and 2007 Monroe Street in Alexandria, Louisiana. (The property at 221 24th Street is actually located in Pineville, Louisiana, also in Rapides Parish.)

[2] Debtor also lists as personal property a claim against Bay-1 Properties and Benjamin L. Bayonne, III, in an unknown amount. (Doc. #1, Schedule B.)

[3] Bay-1 Properties, Inc., and Bayonne have not filed responsive pleadings.

2

First Cause of Action

As his first cause of action, the Trustee alleged that the transfers by quitclaim deed from Carty to Bay-1 on November 30, 2005 were not valid in form under Louisiana law and should be set aside as nullities. The Trustee now concedes that asserts that all of the transfers are in proper form, and seeks to amend or dismiss this first cause of action. (Doc. #42, p.2.)

Second Cause of Action

The Trustee next alleged that since Carty was not the owner of the properties on January 23, 2006, the date the mortgages were recorded, the mortgages should be set aside, as "without effect as to a third person" under La.Civ.Code art. 3338, more commonly known as the Public Records Doctrine.

Third Cause of Action

The Trustee alleged that the transactions constituted simulations under Louisiana law as the ownership never changed, and should be set aside, and also addressed the matter of form, although, again, the trustee has conceded the validity of the form. (Doc. #42, p.2.)

Fourth Cause of Action

The Trustee further asserted the transactions were fraudulent conveyances, made or incurred within one year before the date of the filing of the petition, made with actual intent to hinder, delay or defraud any entity to which she was or became indebted on or after the transfer was made or such obligation was incurred, or received less than a reasonably equivalent value in exchange for such transfer or obligation, and that debtor was insolvent on the date of the transfer or the date the obligation was incurred, or became insolvent as a result of the transfer. The trustee further alleged that the debtor was engaged in business or a transaction, or was about to engage in same, for which any property remaining in the hands of the debtor constituted unreasonably small capital, resulting in debts that would be beyond the debtor's ability to pay as such debts matured. The trustee alleged the transfers should be set aside under 11 U.S.C. §548.

Fifth Cause of Action

The Trustee alleged that the transfers are avoidable under 11 U.S.C. §544(b)as a transfer of an interest of the debtor in property that is avoidable under applicable law by a creditor holding an unsecured claim allowable under 11 U.S.C. §502.

3

### Sixth Cause of Action

The Trustee further alleged that the actions of the debtor in attempting to make the transfers are avoidable under 11 U.S.C. §547, 548 and 549.

### Seventh Cause of Action

For his seventh cause of action, the Trustee asserted that Bayonne and Bay-1 were engaged in a conspiracy with agents of the predecessor of Deutsche Bank, all of which caused a loss to the debtor and the depletion of her assets, and sought the equitable subordination of any claim of the bank for any distribution under 11 U.S.C. §510.

### Eighth Cause of Action

For the eighth cause of action, the trustee seeks recovery of interest against Bayonne and Bay-1 "on the amount transferred from the date of the transfer."

### Ninth Cause of Action

Finally, the Trustee asserts that Bayonne acted in an *ultra vires* capacity with Bay-1, making him personally liable for such acts as well as his own actions, with Bayonne and Bay-1 acquiring the loan proceeds under fraudulent circumstances, thereby entitling the Trustee to a money judgment against both.

No responsive pleadings have been filed by Bay-1 or Bayonne. A separate answer was filed, by different counsel, on behalf of Deutsche Bank National Trust Co., as Trustee of Ameriquest Mortgage Service, Inc., to the Trustee's Causes of Action four through nine, the latter, however, generally incorporating the prior defenses set forth in the answer to causes of action one through three. Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Services, Inc., filed an answer to the Trustee's first, second and third causes of action, asserting inter alia, lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, comparative or contributory fault on the part of Carty, and that the Trustee's claims are time barred under Louisiana Civil Code Article 3343. (Doc. #27.)

Finally, the bank asserts in its answer that the mortgages *were* granted at a time when Carty was the record owner of the properties subject to the mortgage, and that Bay-1 Properties, Inc., the entity to which she transferred the same, is the only person with standing to complain of the validity and might have standing to invoke the protection of the public records doctrine. (Doc. #27, ¶29, emphasis supplied.) However, it maintains that because of the collusion, arrangement or contract

4

with Carty, Bay-1 Properties is bound to recognize the mortgages and is not entitled to the protection of the public records doctrine, and that the mortgages are valid encumbrances against the properties.[4]

Deutsche Bank now seeks summary judgment by separate motions, seeking partial summary judgment as to the first three counts (Doc. #35), and a separate motion seeks relief as to Counts four through nine (Doc. #32). Each motion is accompanied by separate supporting memoranda, exhibits, and separate statements of uncontested facts. The trustee's complaint (and his concessions as to form), the separate answers and motions by Deutsche Bank (and the conflicting position taken by it as to the role of the debtor) make discussions of each count of the trustee's complaint and the motions difficult. Accordingly, these reasons will address the trustee's claims under the various codal provisions on which the complaint is based.

## Law and Analysis

The transactions at issue are succinctly described in the memorandum in support of the Motion for Summary Judgment filed by Deutsche Bank National Trust Company, as trustee of Ameriquest Mortgage Service, Inc., which reads as follows:

> On September 1, 2005, Bay-1 Properties, Inc., a Louisiana Corporation, executed, through its authorized representative Benjamin Bayonne, III, five (5) quitclaim deeds purporting to transfer property to Dorothy Louise Carty. Each Quitclaim was notarized and witnessed, but none were filed in the conveyance records of Rapides Parish until November 30, 2005. On November 30, 2005, Carty executed five (5) quitclaim deeds purporting to transfer the properties back to Bay-1 Properties, Inc., which were filed in the conveyance records of Rapides Parish on the same day.
> In the interim, on October 29, 2005, Carty executed mortgages to Ameriquest Mortgage Co. on all five (5) of the properties described in the quitclaim deeds. All five (5) mortgages were subsequently filed in the mortgage records of Rapides Parish on January 23, 2006."

Memorandum in Support of Motion for Summary Judgment, Doc. #35-3, pages 7-8 (citations to exhibits omitted).

Deutsche Bank maintains that the transfers are not only unavoidable under 11 U.S.C. §544,

---

[4]Although this answer suggests that there was a scheme involving Bayonne, Bay 1, and Carty, and that the mortgages are nonetheless valid against Bayonne and Bay-1, the bank has not sought any affirmative relief against Bay-1 or Bayonne.

5

547, 548(a)or(b), but also that the trustee cannot void or equitably subordinate the Deutsche Bank mortgages under §548(c), which is applicable only to the extent a transfer is not otherwise voidable under §544, 545, and 547.

The Trustee attacks the motions by asserting the bank's positions are inconsistent. The trustee claims the bank is attempting to assert a mortgage executed by Carty on properties it asserts she never owned, although the bank's representative's affidavit states it believed she was the owner, and was to repay the loans. The affidavit of the bank's representative attests to the fact that the bank made the loans to Carty in good faith, relied on her promise to pay, and had no knowledge of the involvement of Bay-1 or Bayonne. The trustee asserts this conflicts with the Motion for Summary Judgment as to Counts One through Three and the version of events set forth in the affidavits of Carty and the (unsigned) affidavit of Bayonne. He further points out that no affidavit has been furnished by either the closing attorneys or notaries or the witnesses. The Trustee then notes that the bank, through different counsel, asserts that the sales were simulations and Bay-1 owned the properties at all times. In conclusion, the Trustee submits that the motions should be denied with the exception of the concessions made as to Counts One and Three. Memorandum on Behalf of the Chapter 7 Trustee. (Doc. #42.) The Trustee filed a separate Statement of Contested Material Facts. (Doc. #44-2).

## The Holding in *Zedda*

Deutsche Bank relies heavily on the Fifth Circuit holding in *In re Zedda*, 103 F.3d 1195 (5 5th Cir. 1997). A review of the facts in that case is in order, inasmuch as it does inform as to the disposition of many of the trustee's claims, at least on motion for summary judgment.

Mr. and Mrs. Gaudet acquired a home in New Orleans in 1964. They had two children,

6

Ferdie and Janet. After Mrs. Gaudet died in 1980, Janet and her husband moved into that family home with her father and began paying the monthly expenses. By 1985, repairs of about $30,000.00 were needed. Mr. Gaudet could not qualify for a loan. The banker suggested the property be transferred to Janet and her husband, so Janet could obtain the loan. The succession of the mother was opened and the heirs placed in possession, with Mr. Gaudet recognized as the owner of a one-half interest and the son and daughter were recognized as the sole heirs subject to his usufruct.

The father, son and Janet then entered into an act of cash sale transferring all of the property to Janet for a recited cash consideration of approximately $85,000. The same day, Janet mortgaged the property for $30,000.00. In time, the brother became concerned and tensions were created in the family, resulting in Janet executing a counter letter reciting that the title had been placed in her name for convenience only, that it belonged entirely to her father, she did not pay the cash consideration recited in the deed, and her father made all the monthly payments. That instrument was recorded in the conveyance records on June 8, 1990, together with an act of sale and assumption of mortgage whereby Janet conveyed the property to her father, who assumed the outstanding mortgage. However, an unrecorded addendum recited that Janet was only transferring her inherited 1/4 naked ownership in the property subject to her father's usufruct, but stating that the other 3/4 interest in the property transferred in the first deed was for convenience only and for no consideration, in accordance with the counter letter, and that the actual consideration paid to Janet in the 1990 transaction was $9,000.00, representing the estimated fair market value of the undivided 1/4 naked ownership interest subject to the usufruct.

On March 4, 1991, Janet and her husband filed a Chapter 7 bankruptcy. The property was sold and the funds were held pending resolution of a complaint filed by the trustee to recover the

7

proceeds as a fraudulent conveyance and as a preference under 11 U.S.C. §548 or alternatively under §547. The trustee also sought to set aside the transfers accomplished by the counter letter and subsequent deed under his avoiding powers and to have same returned to the estate. The bankruptcy court determined that the counter letter and subsequent deed were fraudulent conveyances and declared the estate to be the owner of the property and the sale proceeds. The bankruptcy court also linked the trustee's powers under §544 to §548. The district court affirmed but disagreed with the bankruptcy court's interpretation of §544 and remanded the matter to the bankruptcy court to determine if Gaudet was entitled to reimbursement of the $9,000.00 he paid to Janet in connection with the 1990 deed.

On remand, the bankruptcy court found that Gaudet was a good faith transferee under 11 U.S.C. §548(c) so that he was entitled to a lien on the estate for $9,000.00, and found that sum to be a fair value for the undivided interest. The district court affirmed and an appeal was filed to the Fifth Circuit.

The Fifth Circuit began its analysis with an examination of the hypothetical strong-arm powers of the Chapter 7 trustee under §544, which permit the trustee to step into the shoes of a creditor for the purpose of asserting state fraudulent conveyance actions as a hypothetical creditor or bona fide purchaser as of the commencement of the estate, i.e. the filing of the petition. Additionally, the trustee has other specific avoidance powers, including the power under §548 to avoid transfers made by a debtor in fraud of his creditors. These powers are, the Court observed, independent.[5]

---

[5] The Court noted that another of the trustee's specific avoidance powers is the avoidance of preferential transfers under 11 U.S.C. §547, the trustee had not relied on that section.

8

The Court examined Louisiana's Public Record Doctrine, noting that it intersects with §544, quoting the following definition of the doctrine from the Civil Code Ancillaries:

> "No *sale, counter letter,* lien, mortgage, judgment, surface lease, or other instrument of writing relating to or affecting immovable property shall be binding or affect third persons or third parties unless and until filed for registry in the office of the parish recorder where the land or immovable is situated. Neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties.

La.R.S. 9:2721 (emphasis supplied)."

The Court however noted that the trustee may rely on the Public Records Doctrine *only* when he assumes the status of a hypothetical creditor or bona fide purchaser as of the commencement of the case under §544; but he may not assume the third party status for the purpose of §548. Further, the sections may not be linked. The Court also examined the historical use of simulations in Louisiana, explaining:

> "Simulations are not uncommon in Louisiana; neither does their use imply anything negative or untoward. It is a typical practice in Louisiana, for example, for children who have inherited the naked ownership of a deceased parent's share of the former community property, subject to a usufruct in favor of the surviving parent, to reconvey their naked ownership interests-especially in the case of the parents' home- to the surviving parent so that he or she may enjoy full ownership of the property for the remainder of his life, in anticipation that such property ultimately devolves upon the children at the surviving parent's death. Such a transfer may be accomplished by a simulated sale in which the children convey their interests to the surviving parent for a recited cash consideration that in fact is never paid. In addition, historically, because the recordation of a donation created a cloud on the record title, a party who made a donation often executed and recorded a simulation." *Matter of Zedda*, 103 F.3d 1195, 1204, fn.34.

The Court then turned to the "snapshot" of the public records as of the date of the commencement of the Zedda's case, where the title stood in the name of the father, not the debtor in bankruptcy. Thus, no third party could have taken a deed from Janet or obtained a judicial or legal mortgage as of the date of filing, since she had not had record title to the property on that date

9

or for the previous five to six months. Therefore, the trustee's attack under §544 failed, with the Court declining to permit the trustee to rely on the public records doctrine retroactively.

The Court then turned to an examination of the transactions under §548. The trustee had not alleged actual fraud or in bad faith in violation of §548(a)(1), thus the trustee was relegated to claims under §548(a)(2). This section requires a showing that the transfer of "an interest in property," on or within one year of the date of filing of the petition, for less than a reasonably equivalent value, which caused or increased her insolvency. In this inquiry, the court noted that the true nature of the transactions must be examined, with substance trumping form.

The Court then noted that the sole purpose of the 1986 deed to Janet was to place her into the position to obtain the loan. The civil law *cause* (being the motivation or reason why a party becomes obligation, as opposed to the common law notion of consideration) for the transaction was first, to obtain the loan, second, (established by the counter letter) to reconvey the property to her father. In reviewing the entire series of transactions, including the 1990 deed, the court determined that the title had been transferred for convenience only, no cash or other assets having been exchanged. The court next observed that the bankruptcy court and the district court failed to consider that the public records doctrine and record title failed to protect the trustee under §548, observing that the proper conclusion was that the 1986 transaction was a simulated sale having no effect on either legal or equitable ownership.

The Court next addressed the fact that Janet did own a one-fourth naked ownership interest in the property. That was the only property unaffected by the simulated sale and the only interest she actually conveyed to Gaudet in the 1990 deed. The Court then addressed whether or not that transfer was for less than a reasonable equivalent value under §548. Although the bankruptcy and

10

district court excluded evidence of the value, evidence that the naked ownership interest in the property had a value of $9,000.00 had been proffered, and the record clearly demonstrated her father had actually paid Janet that amount. The bankruptcy court on remand had awarded the father a lien against the estate in that amount, finding it to be a reasonably equivalent value for the sale of the undivided naked ownership; and the Fifth Circuit affirmed the holding. Thus, the trustee's attack under §548 failed.

## Summary of the Evidence from the Exhibits and Affidavits

The transcript of the §341 meeting indicates that debtor became acquainted with Bay-1 and its principal, Benjamin Bayonne, through her daughter-in-law, who worked for an attorney. Therein she revealed that for the sum of $10,000.00, which she received in early November 2005, she foolishly allowed herself (she states her "name" and "credit rating" of "800") to be used by Mr. Bayonne of Bay-1 to become the mortgage debtor as to five of his many rental properties, while he continued to collect rents. She testified Bayonne made the payments on the properties which were refinanced for one year, and then stopped (after which she repeatedly tried to call him, all to no avail). Debtor testified that she did not receive the rent, other than for the first month, which was changed to Bayonne's name, and that all the properties were occupied "under Section 8," presumably a reference to a federally funded rental assistance program. In the end, only five properties were refinanced (at least to her knowledge). (Doc. #35-2, p.18)[6]

Carty testified that the attorney's office was "being used" in this endeavor, and the attorney was supposed to receive a large sum of money. Debtor's daughter-in-law was fired from the law firm in March of 2006. Debtor testified that other people were involved in similar transactions,

---

[6] The Trustee states the transcript of the §341 meeting is incomplete.(Doc. #42, p. 5.)

11

including one Terry Fontaine, and Hugh Carty, debtor's son.

However, contrary to the debtor's testimony at the §341 meeting, the HUD statements she signed as to each mortgage, acknowledge that she received the *entire* proceeds of all five loans, less the closing costs as to each transaction. (Doc. #32-7.) The affidavit of Andrea Rodriguez-Tapia, a representative of Citi Residential Lending, Inc., the servicer of the original mortgagee of the five properties, attests that her records reflect the wire transfer of the proceeds were directly made to the debtor, Ms. Carty. (Doc. #32- 8.) The total amount of loan proceeds on the five properties issued on October 29, 2005 amounts to $331,926.97. (Total derived from HUD statements, Doc.32-7.)

A purported affidavit, which is unsigned, by Benjamin Bayonne, III, asserts that all of the deeds did not reflect the true intent of either party, and that it was the sole intent of each party that the quitclaim deeds produce no effects between them, and that ownership of all five properties would remain with Bay-1 Properties, Inc. (Affidavit of Benjamin Louis Bayonne, III, Document #35-2.) No affidavits of witnesses to the acts of mortgage, the quitclaim deeds, and the closing notaries have been furnished.

**Motion for Summary Judgement and Application of Zedda to these Facts**

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Bankruptcy Rule 7056, provides in pertinent part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." "Although summary judgment is a useful device, it must be used cautiously or it may lead to drastic and lethal results." *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980).

In ruling on a motion for summary judgment, the evidence should be considered in the light

most favorable to the non-movant. *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983). However, the opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).

There being no dispute as to the recordation dates, as in *Zedda*, the efforts of the Trustee under §544 must fail. The "snapshot" of the public records shows Carty was not the record owner of the properties on the date of filing the bankruptcy case. No third party could take a deed from Carty, or obtain a mortgage from her or judgment against her on that date.

Unlike the situation in *Zedda*, the trustee here has used the "kitchen sink" approach, alleging any and every cause of action in the code. Here, the trustee relied upon §547, asserting that a preferential transfer had been made. Deutsche Bank maintains the mortgages are not voidable under §547(b), since all of the requirements set forth in that section must be met, and none of the transfers took place within 90 days of the filing of the petition (nor between 90 days and one year of the date of filing, if the transferee is an insider). There is also no allegation of any antecedent debt, thus this effort must likewise fail. Moreover, no facts regarding a post-petition transfer have ever been asserted, so the claim under §549 must be dismissed on this motion for summary judgment.

What is apparent upon examination of the transactions is that trustee's claims most appropriately fall under §548, where he has alleged actual fraud in violation of §548(a)(1), as well receipt of less than reasonably equivalent value under §548(a)(2). Here, again, Deutsche Bank relies on *Zedda* , insisting that Carty's testimony at the §341 meeting to the effect that she received no proceeds of the loans, that the same was a part of a scheme or artifice by Bay-1 and Bayonne, and that the transfers were simulations establish that the properties never formed part of her bankruptcy

13

estate. (Doc. #44-2.)⁷ The Trustee, however, maintains that Deutsche Bank's position with regard to the nature of the transactions, particularly the facts surrounding the receipt of the funds, is contradictory.

As noted previously, the affidavit of Andrea Rodriquez-Tapia, however, states that Dorothy Louise Carty was the loan applicant, the applications were reviewed, analyzed and approved on the financial information she provided, the loans were made to Carty in good faith, that Carty received the loan proceeds, and the bank relied on her to repay the loans. The affiant denies any knowledge of involvement by Bayonne or Bay-1 Properties, Inc., in the transactions themselves or any responsibility for repayment. (Affidavit of Audrea Rodriquez-Tapia, Doc. #32-8.) The HUD loan documents themselves demonstrate that the loan proceeds were received by the debtor. (Doc. #32-7.) The HUD closing statements reflect the attorney where Carty's daughter worked as the disbursing agent, and demonstrate that Carty received the loan proceeds, in accordance with her applications, as shown by the closing documents (Doc.#32-6), and an affidavit of a bank representative establishes that the bank looked to Carty to repay the loans, and was unaware of the involvement of any other party. (Doc. #32- 8).⁸

As *Zedda* instructs, the court must examine the true nature of the transactions. We first address the contention that the transactions were simulations. Under La. CC Art. 2025, a contract

---

⁷The suggestion that the properties did not form a part of the debtor's bankruptcy estate arguably conflicts with the relief requested in the series of motions for relief from stay filed by Deutsche Bank in the related bankruptcy case. (Docs. #7, 10, 12, 16 and 18.)

⁸The possible involvement of the debtor's family members as witnesses and/or co-conspirators, and the daughter's employer, an attorney, as presiding closing agent and counsel for the Ameriquest mortgagee, leaves the Court to speculate as to whether all necessary parties to this suit have been named as party defendants in the §548 claims.

14

is a simulation when, by mutual agreement, it does not reflect the true intent of the parties. A simulation may be relative or absolute; the latter taking place when the parties intend that the contract produce no effect between them. This would occur if the parties contract for a sale but intend that the vendor remain the owner. A relative simulation occurs when the parties wish for the act to produce effects between them, but not the effects stated in the contract. While the Court in *Zedda* suggests that the use of a simulation does not necessarily imply anything negative or untoward, the testimony of the debtor, coupled with the allegations of both the trustee and Deutsche Bank (and the latter's conflicting positions) suggest that something more sinister was afoot here.

In the final analysis, it is apparent that the debtor was never at any time the *record* owner of the five properties. Nevertheless, this Court can scarcely overlook the fact that the bank has contradicted itself in answering that the mortgages were granted at a time when Carty was the "record owner" of the properties subject to the mortgages (Doc.# 27, ¶29), but through same counsel has outlined just the opposite in its memorandum in support of motion for summary judgment (the September 1, 2005 transfer to Ms. Carty was not recorded until November 30, 2005, the same day as the recordation of the transfer of those same properties back to Bay-1 Properties, Inc., so that on any given day before, on, or after October 29, 2005, any examination of the public records always revealed Bay-1 as the record owner, not Ms. Carty). Even if the transactions themselves were simulations, and the debtor never the actual owner of the properties, there are a great many unanswered questions about the loans and their proceeds. In that respect, and with particular attention to the §548 claims, other genuine issues remain as to the extent to which the estate of the debtor is affected by the transfers (legal issue), and the unusual circumstances regarding the mortgages and the loan proceeds (issues of fact). While the HUD statements suggest the debtor

received the loan proceeds, the listing of the claims against the Bay-1 and Bayonne defendants, as well as the §341 testimony suggest otherwise, and the Trustee may step into the shoes of the debtor. In that regard, the present record is lacking. Thus, this Court declines to dismiss the Trustee's claims under §548, as well as the Trustee's claims against Bayonne and Bay-1, and the Trustee's claims for equitable subordination under §510.

## Conclusion

The Motions for Summary Judgment are Granted as to all claims of the Trustee under §544, 547, and 549, including but not limited to the claims that the transactions are not in the proper form. However, as to all of the Trustee's remaining claims, including but not limited to claims under §548, any and all claims against the defendants Bayonne, Bay-1, and the claim for equitable subordination under §510 are denied. On all remaining counts, the Motions for Summary Judgment are denied, and a Scheduling Conference will be set whereby discovery as to the Bay-1 and Bayonne defendants may be expanded at parties' request, and the parties may be allowed time to amend their pleadings in conformance with the reasons asserted herein. A separate and conforming Order will be entered.

# # #